You may proceed whenever you're ready. Good morning may it please the court I'm James Laughlin and I'm here on behalf of the appellant Ashley Lowe. With the court's permission I'd like to reserve two minutes of my time for rebuttal. This habeas case involves two claims. Ms. Lowe's first claim is like the one the court recently addressed in the case of Mart V Beard, namely that her attorney rendered ineffective assistance when he failed to make a meritorious suppression motion and thereby prevented her from making an informed decision whether to The respondent contends that Ms. Lowe's petition didn't adequately allege this kind of claim because she didn't state it as artfully as an attorney would have. But the court... Let me get a couple more questions because your time's limited and I have a couple questions here I wanted to make sure to ask you. What's your best authority that an evidentiary hearing was necessary here in light of the presumption we give to statements that are made in open court? So you're the the best evidence I have is Blackledge itself which says statements made in the context of a plea record provide a strong presumption of truthfulness and it can present a considerable barrier but it is not unrebuttable because no court can create a presumption that precludes the possibility that statements made during the plea record are the subject of And this is where it's very important to recognize that we are in the pleading stage of this case. Ms. Lowe does face a significant hurdle to prove and to prove facts to rebut this presumption in the district court after full evidentiary development. What I think is improper for the Superior Court and the District Court to have done is to shut it down at the pleading stage to never give her that chance. There is clearly a conflict between the plea record and what she said and alleged in her habeas petition which is my attorney never explained any part of the plea agreement to me. That allegation if proved will rebut the presumption. So at this stage the pleading stage I think it is sufficient to overcome the presumption leaving for another day whether the presumption will ultimately be present overcome after the facts are fully developed and the court makes requisite credibility findings. The next question I had is whether or not I think you're arguing that there might be a McMahon claim that was made here is that right? Yes. And I'm trying to figure out where that would be even if we read this liberally. It's in the state courts habeas petition Ms. Lowe simply stated as ground one that Miranda rights violated Sixth Amendment right. How do we get the McMahon claim? Well I think I think again because there's a significant allegation missing there. Right well I think that that keeping in mind you were reviewing this liberally giving her the benefit of any reasonable doubt the reference to the Sixth Amendment which has no place in Miranda or general police interrogations I think can and should be construed as a reference to her Miranda rights was implicating her attorney right that did come into play during her plea colloquy. Now you know I don't think that and I also think this should be construed in light of the second claim which alleged more generally that there her attorney did not adequately discuss and explain aspects of the plea. There's a different sort of nuance to it though because the lawyer had made a suppression motion earlier and it was unsuccessful if I understand that record correctly. On separate grounds that's correct. I thought there was a Miranda ground as well. Oh I'm sorry to be clear the attorney at the superior of the judicial court stage did make a Miranda motion which was granted in part. The court found that the that the grant and denied in part and right there are basically saying that the what happened after the Miranda defective Miranda violations could not have come in. So why why would it be ineffective to not do the exact same thing again? In other words it had already been done. Well I think there's a couple of responses that one there's no dispute that the adult court wasn't bound by what happened in the lower court so it could be renewed. Second putting aside whether her initial statement should have been suppressed what competent lawyer knowing that this motion had been partially successful wouldn't have at least redo the part that he that was one on below to at least preclude the statements that she made after the Miranda violations from coming in. There's there'd be no reason not to do that but most importantly the problem is that even as argued by in the in the juvenile court this claim was never adequately adequately presented and argued in a way that that that that that it should have been by a competent lawyer like and if the court looks at the court's ruling in the juvenile court where it partially granted the motion what it said was there's this change of tone and we can see enough the courts watch the video it occurs about 37 minutes into the video where the detective gets very angry and accuses her of lying and pressures her into you know making same saying I know what you did you got to tell the truth. The juvenile court judge said you know there's that change in tone and I think that's when it starts to get a little custodial but then you give a Miranda violation but the problem is the Miranda violation was tainted so I'm going to what no it was the nobody pointed out either then or what a competent lawyer should have brought up in the adult court was that's when all the bad stuff happened. The there was no confession until there was this change in tone where the the detective became very aggressive and at that point I think there is no doubt that given the factors relevant to the in custody termination she was in custody. Even if the attorney who represented Ms. Lowe in the juvenile court had stood up and said your honor you make a good point but let's that if the change in tone is what makes it custodial you need to suppress the not only the stuff that happened after the Miranda claim 10 minutes later but the she stuff she said in that 10 minutes in the process of undergoing that aggressive kind of interrogation. So I think that the issue is that it's this issue was never it was touched upon at best by the juvenile court lawyer but it was never argued in a way that it should have been and I think the court has the evidence in front of it now I mean if the court looks at the relevant factors which we've discussed I think that this is a very strong motion and I think what the court recognized in Mark V Beard is that with this kind of Tollett-McCann let's call it a marked claim now that if if an attorney fails to bring a motion a suppression motion on key evidence that has a fair chance of a possible chance of winning that's deficient performance. If the motion is so strong that it probably would have been granted and the defendant wouldn't have pleaded guilty had the evidence been suppressed then the second prong of the claim is proved as well and I think here we have established that the the working backwards the other way if you were to disagree with your argument on the insufficiency of the explanation of the plea agreement if we were to find that the plea agreement was proper in every way including the lawyers going over it with her and her grandmother would this claim pass out of the case as a procedural matter? No I don't think so because because one I think that they they are standalone claims and I would and I think that with the liberal construction you can consider the claim to in liberally construing claim one but I'm not talking about whether it's adequately pleaded I'm talking about whether the if if a once somebody voluntarily and knowingly and intelligently enters into a plea agreement some of the ancillary predecessor claims go away just that could have been brought but were not for one reason or another is this one of those? No because and maybe I misunderstand the question but if I if I understand the question questions being let's assume that the lawyer did sit down with her explain every aspect of the plea agreement to her here's what your sentence is going to be you know I don't think you're going to do well at trial blah blah blah you should really plead guilty and she's fine right if he did have that conversation without ever bringing a meritorious motion that should have won that's still a viable claim under Tollett McCann Mart so so that to that extent is separate there's a there's a separate issue of that he failed to explain any part of the plea agreement to to her but if he explained because because again the discussion okay because because as the we cite to the ABA standards in the brief and that includes saying you know you can't have that conversation until you've investigated the case and you pursued every reasonable Avenue and in this case the reasonable Avenue is bringing a meritorious suppression motion that should you've used your time but we'll give you a minute for about thanks very much good morning Deputy Attorney General Blythe Leskay for respondent may it please the court petitioner's decision to plead guilty here was counseled very intelligent and eminently reasonable the state court records show that counsel advised her before her plea she said he did she said it both in writing and orally in court he said that he did even describing his conversation with her on the record the state court therefore could not have been unreasonable in rejecting this claim additionally petitioners never alleged that she would have rejected the plea and insisted on going to trial under any circumstances and she had needed to show to get a hearing an evidentiary hearing in your view she would have had to show first she would have had to provide some support for her allegation that her attorney did not other than her word like what for exit for example she could have provided a declaration from her grandmother who was purportedly part of this conversation or at least an explanation as to why she didn't she could have provided a declaration from her attorney or an explanation as to why she didn't she could have turning she's saying didn't provide the council to her are you talking about that attorney which right the attorney that was present and part of this conversation or whatever whatever conversation there was there was at least some conversation that happened we know from the record she also could have explained why it is that she said something contradictory in court why it is that she kind of said that well she didn't she didn't say she didn't explain anything in her allegations other in her petition other than stating my attorney didn't talk to and he had my grandmother explain it to me she also doesn't describe why anything that her attorney would have made a difference to her in pleading guilty or going to trial just but looking at the transcripts our answers are either yes yes no no no yes yes no no and she's saying hey I'm did that because my I know there's a blackledge and we give a strong presumption for what's in open court but in this circumstance it's hard to ignore that this is a 15 year old at the time that she was arrested I don't know how old she was exactly when she had the colloquy she's being charged with murder she has an IQ of 62 and so I had some of the same concerns with respect to the Miranda but I'm just in this context and wanted to hear what your answer was certainly your honor and I think it's important to know I think I believe she was about 18 when she actually pled guilty but nevertheless she did answer yes or no to most of the questions until you get to the end which she did ask two questions regarding the DNA she said why do you need that and then when the court suggested fire camp she asked you know very reasonable question what is that what so so that is indicative of two things with what she's alleging well but it's indicative of two things one that she wasn't just saying yes or no wrote Lee and she wasn't just standing up and and not paying attention she understood what was happening she understood what the court was saying to her she understood what was going on and the fact that she asked questions regarding these two topics also shows that she likely did have a conversation with her attorney about the substance of her plea because DNA and fire camp are not the types of things that she would have that her attorney would have discussed with her regarding the plea because those are things that would apply regardless of whether she was convicted after trial or whether she pled guilty and so they're simply not the things that would have been discussed can I ask you about I guess whether or not she was in custody at the time that her statement was taken it seems like again she was a minor she had an IQ of 62 she was unaccompanied by an adult at that time and she was in this police station room somewhat situated in a corner there's two is there a small room there's two police officers standing are sitting or right and between her and any door do you think she really felt like she could stop in the interview at any time and walk out um I'm happy to answer that question I would first note however that in order to get to the substance of the Miranda claim the court would and petitioner would have to show about six different obstacles in order to reach that but I but I'll answer your answer honors question so the although she was 15 at the time and the detectives didn't know that there was no indication in the in the interview itself that she had any kind of mental problems with her capability of understanding what was going on and there was no way for the detectives to have known that there was nothing to indicate that they took advantage it was clear they told the grandmother that oh they're just she's a witness we just want to ask her questions it's clear at 30 point minutes into the interview or whatever that point was that your colleague across the aisle mentioned the the officer said we know you're lying I mean they had a lot of information apparently more than they revealed to her or her grandmother initially and just unloaded on her at that point in time I'm not saying they couldn't do it but with this particular individual it seems like they did she was more than just a witness thinks she was a person of interest to them at the very least at that time and then they started saying you're lying you're lying and confronting her I know that we have to interpret her state court claim as a McMahon claim I know to get there but one of the paths or regarding what you did interpret that as her having alleged that her counsel did not in do what he needed to do with respect to Miranda I think ultimately say there was no Miranda violation and I'm just not sure about that well going back to the beginning of the interview I and I think what your honor pointed out is important which is that she was not considered a suspect and I don't know that it's clear that the police had additional information I don't think it's clear exactly how much they did know or how much they were feeding off of what I wanted to ask you also about your assertion that they had no reason to think that she had you know mental deficiencies for lack of a better phrase I mean this is a person who if I remember correctly at the beginning of the interview says she's a 15 year old she doesn't know how to spell her middle name that's pretty unusual I actually think it's funny that your honor brought that up I also didn't know how to spell my middle name until I was about 18 and my middle name is very simple it's Jean but because my mother whose name was Jean spelt it in kind of an odd way I assumed that that was how my middle name was spelled and actually was spelled in the very most simple way j-e-a-n I didn't know that until I went to get my driver's license and had to look at my birth certificate so what is I guess it would have struck me differently had I been in the room with this this individual but I take your point and but still not overlooking I understand and I appreciate maybe you didn't know how to spell your middle name but you look at how she answered that question and you later realized that she has a low IQ I just not sure that I'm not sure that that's the same you not knowing how to spell your perhaps it's not the same I appreciate that and that was that was hopefully my point in telling that story but um there are other other factors that go to the custody issue if I can just briefly go over them very quickly that would apply to the beginning of the interview which is that both she and her grandmother were told explicitly that she was not a suspect and there's no reason to doubt that based on the detective and the deputies testimony in court they both said that she was not a suspect at that time and that is considered and they said that she was not under her arrest that she was free to leave and that she told them that she was there voluntarily and wanted to talk to them and the fact that she ultimately ended the interview by invoking her right to remain silent shows that in fact she did understand and she could do so and under there was never any question that she was a witness so they could have been talking to her as a witness rather than as a suspect right and that that point is actually very important in distinguishing the the nature the custodial nature of of an interview I'm at the Supreme Court in 2011 I'm not quite sure how that has bearing in this case but they did find in that JVD versus North Carolina case that a reasonable child suspected subjected to questioning will sometimes feel pressure to submit when a reasonable adult would not and I'm just seems like when you look at her on this video I'm not so sure she was free to leave but we're not here on the direct appeal in that case obvious that is that is true and I think that the questioning in JDP was extraordinarily different from the questioning that occurred here for who is questioned in that case was 12 years old the detectives planted information and basically forced him to say either what I'm telling what I'm suggesting to you is the truth or tell me that your grandfather is a liar they put extraordinary pressure on him they use deceptive means coercive means of questioning that well absolutely did not exist here IQ 62 and then you have the detective in the middle of the interview say listen I'm tired of you not telling I'm losing my patience I mean his tone really does go up at that point and either you're gonna tell us what happened or you know I mean it was kind of that route and so yes she wasn't 12 but can't stand there and say that there was not some pressure exerted on her at that point in the interview there was definitely a shift as the juvenile court found and as as counsel pointed out however even at that point I would suggest that it wasn't coercive nevertheless even if it was considered that was when shortly after that the detective realized that he should read her her Miranda rights and he did so however of course she had already confessed at that point so whether those that advisement was defective or not it's really neither here nor there and that wasn't really an effective way to go about arguing and it's not reasonable to suggest that her attorney should have further argued something that wasn't going to get her entire statement suppressed and it's I think was a most reasonable decision for the attorney to go the route that he did and attempt to get the entire statement suppressed based on her alleged limited intellectual abilities thank you counsel your time has expired thank you your honor a couple of points on the Miranda issue first the court noted that this case is not on direct appeal however it's now uncontested between the parties that the court is looking at this claim de novo whether it's because 2254 D doesn't apply as we said in our briefs or as the government said it's because the court the the Superior Court applied a procedural bar that doesn't affect this courts analysis it is when it gets to this part it's looking at the suppression issue just like it looked at the suppression issue in IMM in a de novo review so the other thing that I wanted to point out was that this idea that the attorney had no reason to even try to do this because he was going another route to try to suppress the whole confession first of all attorneys do more than one thing all the time you can make a motion saying we think Miranda applies and in the alternative we think it's involuntary and that's clearly what any competent lawyer should have done particularly in the with the idea that the entire statement doesn't have to go out what has to go out is that the statements made after the change in tone when it clearly became coercive at the point when Ms. Lowe made all of the representations that would have been used against her had she gone to trial unless the court's any further questions I don't believe we do thank you very much we appreciate the arguments from both counsel they've been very helpful the case is submitted and we will take about a seven minute break
judges: Sack, Graber, Murguia